In the Matter of MICHAEL SPILLANE et al., Individually and on Behalf of All Other Citizens Electors of the City of New York, Appellants, *v.* HERMAN KATZ et al., Respondents, and BENTLEY KASSAL et al., Intervening Defendants-Respondents.

In the Matter of HERMAN B. ZIPSER et al., as Candidates for the Nomination for the Public Office of Judges of the Civil Court of the City of New York for the County of New York in the Primary Election · of the Democratic Party, Appellants, *v.* JAMES M. POWER et al., as Commissioners of Elections in the City of New York, Respondents, and VICTOR A. KOVNER, Objector-Respondent.

First Department, June 10, 1969.

158

*Bernard Meyerson* for appellants.

*Maurice N. Nessen* of counsel (*Richard W. Wallach* with him on the brief; *Kramer, Lowenstein, Nessen & Kamin,* attorneys), for Bentley Kassal and others, intervening respondents, and Victor A. Kovner, objector-respondent.

*Walter M. Schackman* and *Stanley W. Michels* for Richard Lane and others, intervening respondents.

*Harry R. Pollak* for William P. McCooe, intervening respondent.

STEUER, J. Before the court are companion appeals arising out of the same situation. Special Term dismissed the petition brought by Spillane and Greenfield and the petitioners in the second petition stipulated that this dismissal mandated a like disposition on their application. There are, however, some facts disclosed necessitating somewhat different discussion.

Both petitions are brought pursuant to section 330 of the Election Law against the City Clerk and the Board of Elections. The object of the Spillane petition is to direct the City Clerk to certify to the Board of Elections that the elections for Judge of the Civil Court be held on a county-wide basis and to have the board declare void the petitions of all candidates for the said position whose petitions were filed on a district-wide basis. Special Term dismissed the petition on the ground that petitioners have no standing which enables them to be heard.

Concededly petitioners are citizens qualified to vote at the forthcoming election. As such they are persons aggrieved and entitled to petition (*Matter of Mahoney* v. *Lawley,* 301 N. Y. 425, 427; *Matter of Decatur* v. *Board of Elections of County of Albany,* 47 Misc 2d 647, affd. 24 A D 2d 735, affd. 16 N Y 2d 848).

This brings us to the merits of the petition. The basis for the petitioners' complaint has its situs in the constitutional amendment of November 7, 1961, now section 15 of article VI, which provides for the abolition of the former City Court and Municipal Court of the City of New York and the creation of the Civil Court. The Constitution therein provides that the Judges of the Civil Court shall be elected "from districts within such counties established by law." At the expense of repetition, it is well known and recognized by all parties appearing in this matter that this provision was occasioned by a desire to continue the situation prevailing in the former courts, namely, that the former Judges of the City Court were elected from a

county-wide constituency while the former Judges of the Municipal Court were elected by the voters of statutorily fixed districts. This disposition was not written into the Constitution, but rather it was left to the Legislature to continue it as long as it saw fit. At the same time it was recognized that, as all of the Judges of the Civil Court performed the same functions, exercised the same jurisdiction and were subject to the same administration, which was on a county-wide basis, in the absence of other legislative proscription the electoral unit was the county (*Cox* v. *Katz,* 30 A D 2d 432, affd. 22 N Y 2d 903). The Legislature annually from 1962 through 1968 has enacted legislation providing that at the ensuing election vacancies in the Civil Court be filled as follows: successors of former City Court Judges be elected on a county-wide basis and successors of former Municipal Court Judges on a district-wide basis. In 1969 no such legislation was enacted; in fact, no statute of any sort relating to the situation.

It having been determined that in the absence of otherwise specifying legislation candidates for the Civil Court were to be elected on a county-wide basis (*Cox* v. *Katz, supra*), by virtue of the failure of the Legislature to direct otherwise the anomaly of Judges of the same court being elected on differing bases no longer prevails, though subject to reinstatement at the pleasure of the Legislature.

However, the Board of Elections on the possible conclusion that the failure of the Legislature to provide in a manner similar to its earlier enactments was an inadvertence, has ruled as if such legislation had actually been passed and has accepted petitions on a district-wide basis and rejected petitions on a county-wide basis. Obviously this is in effect legislating, and so far beyond the powers of the board that it merits no discussion. However, in view of another question raised it is in order to point to the consequences if the board's action is countenanced and allowed to stand. There would then be an election between candidates some of whom at least were invalidly nominated. Moreover, the invalidity is no mere irregularity but one going to the vitals of the electoral process. Should such a candidate be elected, his tenure on the Bench would be continuously suspect and the Attorney-General would be under a duty to bring quo warranto proceedings with the result that the judicial process in a most important court would be questioned and, in this particular, the electorate would have their franchise nullified.

We have pointed to these consequences because of a procedural argument advanced. The candidates whose petitions are chal-

lenged were not made parties to this proceeding. Actually many, though not all, of them have intervened and it is they who have, with admirable skill, advanced the contentions in opposition to the petition. The officials who are the named defendants take no position at all. Despite their actual presence and the fact that they have been fully heard, these candidates point out that their intervention was allowed at a time when proceedings under section 330 were time barred and their subsequent appearance cannot give the court jurisdiction. We reach decision on acceptance of that contention.

Further, it is recognized that a candidate whose petition is questioned is, generally speaking, a necessary party (*Swan* v. *Cohen,* 179 Misc. 69, affd. 262 App. Div. 956, affd. 286 N. Y. 678). But this is in the situation where the challenge to the petition involves questions of its technical validity. It cannot be the law where the petition itself is a nullity and the candidate supposedly nominated by it would be ineligible to serve if elected, not by virtue of personal disqualification but because his name was never properly on the ballot. In this situation it is not so much the proposed candidate but the electorate that is aggrieved. While the candidate is a proper party (and in this instance was actually heard) he is not an essential party. No court can shut its eyes to what has been called to its attention and suffer the situation to go by default.

By the second petition two candidates seek to have their petitions validated. Each of these candidates filed two petitions with the respondent board, one petition on a county-wide basis, one on a district-wide basis. The board, consonant with its determination as to other candidates, validated the petition on the district-wide basis and invalidated the other. At the time petitioners acquiesced in this determination. Also their counsel stipulated that the determination in the Spillane petition would be controlling, as it would have been if the determination had been made on the merits. However, neither of the procedural objections has any application to this petition. We do not deem their acceptance of the board's action or even their solicitation of the decision rendered by the board to have been a withdrawal of the county-wide petition. Less than that, they are entitled to have the petition validated.

The orders dated June 4, 1969, should be reversed on the law and petitions granted without costs to any party.

McNally, J. (dissenting). I dissent and vote to affirm.

In my judgment, the petitions were properly dismissed, since appellants failed to join candidates who are necessary parties in this proceeding under section 330 of the Election Law.

None of the candidates whose designating petitions are challenged by appellants was named. None of them was served with the petition and the order to show cause. In a proceeding under section 330 of the Election Law, a candidate whose petition is challenged for any reason is a necessary party. This is a jurisdictional defect and the petition was properly dismissed. *Swan* v. *Cohen* (286 N. Y. 678) holding objectors are necessary parties.

At Special Term, in *Swan* (179 Misc. 69, *supra*), the court held the proceeding was commenced without notice to the citizen objectors whose objections had been sustained. They appeared specially in the proceeding and asked that the proceeding be dismissed for that reason. The only service made was upon one of the committee named and appointed to fill vacancies on certain designating petitions. He was not one of the objectors. The time to serve the objectors had elapsed and the objectors were necessary parties to such proceeding. (*Matter of Brennan*, 73 N. Y. S. 2d 317; *Devine* v. *Cohen*, 73 N. Y. S. 2d 317.) The appellants here named as defendants and served only the Commissioners of Election and the City Clerk. None of the candidates for the City Court was served with the order to show cause or the petition.

It has always been the law that candidates whose designating petitions depend on the outcome of litigation are necessary parties. *Matter of Sweeney* (209 N. Y. 567) holding that the Election Law requires notice to be given to candidates affected and no such notice was given in this case. (*Matter of Schwimmer* v. *Power*, 21 A D 2d 835; *Matter of Mucciolo*, 37 N. Y. S. 2d 575; *Yearwood* v. *Cohen*, 37 N. Y. S. 2d 577.) Such a conclusion is correct, since such parties are actually the real parties in interest. (Gassman, Election Law, p. 448.)

Appellants do not have standing to bring these proceedings since they are not candidates aggrieved and are not persons who filed objections before the Board of Elections pursuant to section 145 of the Election Law. This proceeding seeks the benefits of the summary jurisdiction conferred on the court by section 330 of the Election Law. Such a proceeding challenging the validity of a designating petition may be brought only by a candidate aggrieved or by a person who has filed timely objections and specifications under section 145 of the Election Law. The allegations of plaintiffs' petitions fail to demonstrate that they come within either category and in fact they do not come within either category. Plaintiffs lack standing to sue and the court lacked jurisdiction of the subject matter of the petitions. (Election Law, § 330, subd. 1.)

The majority relies on *Matter of Decatur* v. *Board of Elections of County of Albany* (47 Misc 2d 647, affd. 24 A D 2d 735, affd. 16 N Y 2d 848) and *Matter of Mahoney* v. *Lawley* (301 N. Y. 425) for the proposition that petitioners have standing. In my opinion they do not come within the purview of said holdings. Petitioners in those cases met the jurisdictional requisites of section 330 by filing objections pursuant to section 145. Appellants here did not.

The petitions should be dismissed on the merits. The New York State Constitution planned elections in districts within the Counties of New York. Section 15 of article VI, the constitutional provision creating the Civil Court in the City of New York by merger of the City Court and the Municipal Court, provides for the creation of district lines less than county-wide. Subdivision a of section 15 reads in part: " The legislature shall by law establish a single court of city-wide civil jurisdiction and a single court of city-wide criminal jurisdiction in and for the city of New York. * * * The said city-wide courts shall consist of such number of judges as may be provided by law. The judges of the court of city-wide civil jurisdiction shall be residents of such city and shall be chosen for terms of ten years by the electors of the counties included within the city of New York from districts within such counties established by law."

Beginning in 1962, the Legislature provided that vacancies in the office of Judge of the Civil Court occurring by the expiration of the terms of former Justices of the City Court of the City of New York, and their successors, be elected by the electors of the county from which the former City Court Justices were elected. Similar legislative provisions were made for vacancies occurring by the expiration of the terms of former Justices of the Municipal Court of the City of New York, except that they were to be elected by the electors of the district from which the former Judges of the Municipal Court of the City of New York were elected. (L. 1962, ch. 694, § 4; L. 1963, ch. 848; L. 1964, ch. 377; L. 1965, ch. 469; L. 1966, ch. 109; L. 1967, ch. 39; L. 1968, ch. 152.)

This background of both constitutional and statutory provisions bears out that the Legislature established counties as the geographical basis for the election of the offices held by former Judges of the City Court and Municipal Court districts for the election of the offices held by former Municipal Court Judges. The failure of the Legislature to re-enact in 1969 the enabling acts of the prior years does not evidence the legislative intention to disestablish the county and district lines defined in the prior statutes.

Where the State Constitution required districting for senatorial elections and the Legislature failed to district properly, it was held that the former method of election would be preserved to the end that the voters will not be totally disenfranchised, subject to change only by later legislative action. (*Matter of Dowling*, 219 N. Y. 44, 59; *Matter of Sherrill* v. *O'Brien*, 188 N. Y. 185.)

*Cox* v. *Katz* (22 N Y 2d 903, affg. 30 A D 2d 432) is not authority, as claimed here by appellants, for the proposition that elections must be held in counties for Civil Court Judges. *Cox* involved constitutional challenges to a 1968 statute that created 25 more judgeships for the Civil Court of the City of New York and provided for their elections from counties. *Cox* held it was proper for the Legislature to provide for the election of the Judges on both county and municipal court district lines.

For the foregoing reasons, I believe the orders and judgments should be affirmed.

STEVENS, P. J., and EAGER, J., concur with STEUER, J.; McNALLY, J.; dissents in opinion in which TILZER, J., concurs.

Orders entered on June 4, 1969, reversed on the law, without costs or disbursements to any party, and the petitions granted.